STATE OF NORTH CAROLINA v. JAMIE ANTWON MITCHELL

No. COA08-666

(Filed 6 January 2009)

**1. Criminal Law— continuance denied—discovery provided shortly before trial**

The trial court did not err in a murder prosecution by denying defendant's motions for a continuance where the trial began on the Monday after Thanksgiving and the State provided witness interviews on the Tuesday before Thanksgiving and at 5:15 p.m. on the Wednesday before Thanksgiving. The majority of discovery was provided two weeks before the trial, the supplemental discovery was provided during the week before trial, defendant had the opportunity to review the materials before jury selection, none of the materials pertained to the State's first three witnesses, and defense counsel indicated to the court that reserving his opening statement partially resolved the issue. Moreover, defendant did not include any of the discovery materials in the record on appeal.

STATE v. MITCHELL

[194 N.C. App. 705 (2009)]

**2. Appeal and Error— preservation of issues—crime scene diagram—prior testimony without objection**

    A defendant in a murder prosecution waived any objection to a crime scene diagram by not objecting to preceding testimony about the essential content of the exhibit.

**3. Appeal and Error— preservation of issues—photographs-prior testimony without objection**

    A murder defendant waived his objection to photographs depicting the scene where the weapon was recovered by not objecting to prior testimony about the circumstances surrounding the recovery of the gun.

**4. Evidence— photograph—murder victim and family—irrelevancy—other testimony about family—admission not plain error**

    There was no prejudice and no plain error in a murder prosecution in the admission of an irrelevant photograph of the victim with his family where other evidence was heard regarding his family life.

**5. Criminal Law— prosecutor's argument—comment on self-defense**

    The trial court did not abuse its discretion in a murder prosecution by allowing the prosecutor to comment in the closing argument on defendant's use of self-defense. The issue was before the jury, the comment was consistent with the evidence, and defendant could not show such gross error that intervention ex mero motu was required.

    Judge STROUD concurring.

    Appeal by defendant from judgment entered 30 November 2007 by Judge R. Allen Baddour, Jr. in Wake County Superior Court. Heard in the Court of Appeals 20 November 2008.

    *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Lars F. Nance, for the State.*

    *Paul F. Herzog, for defendant-appellant.*

STEELMAN, Judge.

    Where defendant has not demonstrated prejudice from the trial court's refusal to postpone the trial, or that the admission of evidence

was plain error, a new trial is not warranted. Where the prosecutor's closing argument was proper, the trial court did not abuse its discretion in failing to intervene *ex mero motu.*

## I. Factual and Procedural Background

On the evening of 20 January 2007, Jamie Mitchell ("defendant") and his girlfriend, Tenika Utley, attended a party in Apex, North Carolina. Ms. Utley left the party and went to the home of defendant's cousin, Sequina Sidney. Some time later, defendant went to Ms. Sidney's house, where he proceeded to get into an argument with Ms. Utley. The argument escalated and Ms. Utley decided to leave in her car. Defendant followed her outside, and before she could get into her car, defendant pushed her down, grabbed her necklaces, and began choking her. Ms. Sidney called Kevin Dodd and asked him to come to her house to assist in ending defendant's assault on Ms. Utley. Mr. Dodd, along with Timothy Baily, Frank Horton (the decedent), and Charles Horton, arrived at Ms. Sidney's house and witnessed defendant straddling Ms. Utley and holding her down. The men asked defendant to release Ms. Utley, but he told them to "mind [their] own business." When defendant finally released her, the decedent advised Ms. Utley to leave. Defendant told the decedent that he did not "get into your and [your wife's] business" and slapped the decedent. The two men began to fight, at which point defendant shot decedent in the head. Decedent died from the gunshot wound.

On 6 February 2007, defendant was indicted for first-degree murder. On 20 March 2007, defendant was indicted for possession of a firearm by a felon. The cases went to trial on 26 November 2007. The jury found defendant guilty of second-degree murder and possession of a firearm by a felon. The trial court found defendant to be a prior record level III for felony sentencing purposes. Defendant was sentenced to an active term of 220 to 273 months imprisonment on the second-degree murder charge. A consecutive active sentence of 16 to 20 months was imposed for the firearm charge. Defendant appeals.

## II. Motions to Continue

[1] In his first argument, defendant contends that the trial court erred by denying his motions to continue on the grounds that his trial counsel was unprepared for trial. Defendant contends that the trial court's ruling amounted to a denial of his right to effective assistance of counsel, as guaranteed by the federal and state constitutions,

because his counsel was prevented from preparing an adequate defense. We disagree.

Ordinarily, a motion for a continuance is a matter within the sound discretion of the trial court, and the court's ruling on the motion is not subject to review absent a showing of abuse of discretion. *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981) (citation omitted). However, where a motion to continue raises constitutional issues, it is "fully reviewable by an examination of the particular circumstances of each case." *Id.* Denial of a motion to continue is grounds for a new trial "only upon a showing by defendant that the denial was erroneous and that this case was prejudiced thereby." *Id.*

> To establish a constitutional violation, a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. To demonstrate that the time allowed was inadequate, the defendant must show 'how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.'

*State v. Williams*, 355 N.C. 501, 540-41, 565 S.E.2d 609, 632 (2002) (internal citations and quotes omitted). "[W]hat constitutes a reasonable length of time for defense preparation must be determined upon the facts of each case." *Searles* at 154, 282 S.E.2d at 433 (citations omitted). "While a defendant ordinarily bears the burden of showing ineffective assistance of counsel, prejudice is presumed 'without inquiry into the actual conduct of the trial' when 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance' is remote." *State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 336 (1993) (quoting *United States v. Cronic*, 466 U.S. 648, 659-60, 80 L. Ed. 2d 657, 668 (1984)).

In August 2007, defendant filed a motion for the following discovery materials: (1) a copy of any recorded or written statement and a transcription of any oral statements by defendant or any co-defendants; (2) defendant's criminal record; (3) documents and tangible objects; (4) reports of any examinations and tests made in connection with the case; and (5) any exculpatory information. On 16 November 2007, the trial court ordered the State to produce discovery, including any Rule 404(b) evidence. Approximately two weeks before trial, the State informed the court that it was still interviewing witnesses, and that it would provide those interviews to defendant

and his attorney. The trial began on the Monday following the Thanksgiving Holiday. On the Tuesday before Thanksgiving, the State provided defendant's counsel with supplemental discovery consisting of witness interviews, and indicated that additional interviews would be provided the following day. At approximately 5:15 p.m. on the Wednesday before Thanksgiving, the State delivered supplemental discovery consisting of witness interviews to defendant's counsel via facsimile.

Defendant's counsel asserted that he came into possession of the supplemental discovery materials on the morning of trial. Defendant acknowledges that the record does not reveal the exact content of the materials, but he suggests that the new discovery included "re-interviews of old witnesses," interviews of "new witnesses," and "ballistic reports." Defense counsel requested that the trial be postponed until the following day so that he could review the materials and discuss them with defendant. The State informed the trial court that its first three witnesses were law enforcement officers, and that there was no supplemental discovery provided for those three witnesses. The court did not rule on defendant's request for postponement of the trial and took a brief recess. Upon reconvening, defense counsel requested fifteen minutes to finish reading the material and to confer with defendant. The trial court denied defendant's request and began jury selection. After the jury was selected, the court revisited the discovery issue. Defense counsel pointed out that the State's opening statement would not be affected by the discovery issue, and suggested that he and defendant could examine the supplemental discovery during the State's opening statement. Defense counsel also reserved his opening statement and indicated that this "sort of solves the problem in that regard." Further, defense counsel acknowledged that there was no new discovery information pertaining to the State's first three witnesses, but requested that these witnesses not be released following their testimony.

Defendant contends on appeal that the "voluminous new materials" provided by the State "went to the heart of the State's case," and that "no one can be certain how trial counsel might have been able to perform if he had had adequate time to prepare." Defendant argues that due to the "peculiar circumstances" of his case, this Court should presume prejudice and grant a new trial.

Defendant contends that the circumstances of this case are analogous to those in *State v. Rogers*, 352 N.C. 119, 529 S.E.2d 671 (2000).

STATE v. MITCHELL

[194 N.C. App. 705 (2009)]

*Rogers* was a capital case in which the defendant moved to dismiss his attorney one week prior to the scheduled trial. The court continued the trial, and, thirty-four days prior to the start of the trial, appointed two new attorneys for defendant. Defendant's attorneys discovered that none of the witnesses had been interviewed. Despite this problem, the trial court denied two additional motions for continuance, and the trial proceeded as scheduled. The North Carolina Supreme Court held that, under the circumstances of that case, it was "unreasonable to expect that any attorney, no matter his or her level of experience, could be adequately prepared to conduct a bifurcated capital trial for a case as complex and involving as many witnesses as the instant case." *Id.* at 125, 529 S.E.2d at 675-76.

*Rogers* is distinguishable from the instant case. In the instant case, there is no issue concerning the timing of the appointment of trial counsel. The majority of the State's discovery was provided two weeks before the scheduled commencement of the trial. The supplemental discovery was provided during the week prior to trial, and defense counsel had an opportunity to review these materials prior to the selection of the jury. As acknowledged by defendant, none of the supplemental discovery pertained to the State's first three witnesses, and defense counsel indicated to the trial court that the reservation of his opening statement partially resolved the continuance issue. Defendant has not demonstrated that the circumstances surrounding the trial court's refusal to postpone the trial merit a presumption of ineffective assistance of counsel and a presumption of prejudice arising therefrom. *See Tunstall* at 329, 432 S.E.2d at 336.

Further, on appeal, defendant has not included any of the discovery materials in question in the record on appeal, and asks this Court to presume prejudice based upon his vague description of what was contained in these materials. It is the duty of the appellant to include in the record all materials necessary for this Court to consider the issues raised in his appeal. *See State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644-45 (1983) (citations omitted). It is impossible for this Court to evaluate how defendant was prejudiced, if at all, or whether his attorney would have been better prepared had the continuance been granted.

The trial court did not commit error in its denial of defendant's motions for continuance.

This argument is without merit.

### III. Evidence

In his second argument, defendant contends that the trial court erred by admitting into evidence State's exhibits 3, 24, 25, 26, and 27, in violation of the Due Process Clause and our discovery statutes, N.C. Gen. Stat. §§ 15A-901-910. We disagree.

### A. State's Exhibit 3: Crime Scene Diagram

[2] Defendant first contends that the trial court erred in admitting State's exhibit 3, a diagram of the crime scene.

At trial, Agent Phillip Flood, a crime scene investigator for the City County Bureau of Identification, testified regarding the crime scene and the evidence collected from the crime scene. The State subsequently sought to introduce exhibit 3 as illustrative of Agent Flood's testimony. Defense counsel objected to the admission of this exhibit on the grounds that it had not been provided in discovery prior to the beginning of the trial. The trial court overruled defendant's objection and the diagram was admitted.

Although defendant objected to the admission of the diagram, he failed to object to the preceding testimony from Agent Flood. Because the essential content of this exhibit was admitted without objection, defendant waived any objection he subsequently raised as to the admissibility of the crime scene diagram. *See, e.g., State v. Hunt*, 325 N.C. 187, 196, 381 S.E.2d 453, 459 (1989) (benefit of objection lost when same or similar evidence has been previsouly admitted or is later admitted without objection).

Defendant has not argued that admission of the crime scene diagram constituted plain error, and such an argument could not prevail in light of the rigorous standard for plain error and the illustrative nature of the diagram. *See State v. Simpson*, 327 N.C. 178, 192, 393 S.E.2d 771, 779 (1990).

This argument is without merit.

### B. State's Exhibits 24, 25, and 26: Photographs Depicting Scene Where Weapon Was Recovered

[3] Defendant next contends that the trial court's admission of three photographs depicting the scene where the weapon was recovered was error.

At trial, the State's witness, Luke Pyles, testified regarding the circumstances surrounding the recovery of defendant's gun. Mr. Pyles

testified that, on the morning of 30 January 2007, he was supervising children at a bus stop near his home. A young child found the gun in the vicinity of the bus stop, and Mr. Pyles then contacted the police. The gun was subsequently taken into evidence. The State sought to admit the photographs to illustrate Mr. Pyles's testimony. Defendant objected to the admission of the photographs on the grounds that they were not provided in discovery prior to trial. However, defendant failed to object to the testimony of Mr. Pyles and, as previously discussed, he has waived his objection to the admission of the photographs. Defendant has not argued plain error, and we hold that there was none.

This argument is without merit.

B.  State's Exhibit 27: Photograph of Decedent and Family

[4] Defendant next contends that the court erred in admitting State's exhibit number 27, which was a photo of the decedent with his family.

At trial, counsel for defendant objected to the picture being introduced into evidence on the grounds that it was irrelevant and unfairly prejudicial. The trial court overruled defendant's objection.

We agree with defendant that the picture of the decedent with his family was irrelevant in that it did not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). However, admission of this evidence was harmless due to the fact that, following defendant's objection to the picture, Charles Horton testified about the decedent's family life and described his family, including his wife and two young children, without objection. Admission of the photograph could not have prejudiced defendant, given that other evidence was heard regarding his family life. Defendant has demonstrated no reasonable possibility that had the photographs been excluded at trial, the jury would have reached a different result. See N.C. Gen. Stat. § 15A-1443(a) (2007).

Defendant acknowledges that he failed to object to the testimony of Charles Horton. However, he argues that it was plain error to admit this testimony. In order to establish plain error "[d]efendant must show that the error was so fundamental that it had a probable impact on the result reached by the jury." State v. Campbell, 340 N.C. 612, 640, 460 S.E.2d 144, 159 (1995) (citation omitted).

STATE v. MITCHELL

[194 N.C. App. 705 (2009)]

Even assuming *arguendo* that the trial court erred in admitting Charles Horton's testimony, defendant cannot demonstrate that this testimony had a probable impact on the result reached by the jury. *See id.*

This argument is without merit.

## IV. Argument by Prosecutor

**[5]** In his third argument, defendant contends that the trial court erred in allowing the prosecutor to comment on defendant's use of self-defense. We disagree.

It is well-settled that counsel is entitled to argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom. *See, e.g., State v. Smith*, 351 N.C. 251, 269, 524 S.E.2d 28, 41 (2000). A trial court is not required to intervene during a closing argument "unless the argument strays so far from the bounds of propriety as to impede defendant's right to a fair trial." *Id.* Where a defendant does not object to the statements, the standard of review on appeal is whether the prosecutor's remarks were so grossly improper that the trial court's failure to intervene *ex mero motu* constituted an abuse of discretion. *State v. Barden*, 356 N.C. 316, 356, 572 S.E.2d 108, 134 (2002).

In the State's closing argument, the prosecutor argued to the jury:

[Defense counsel] did not talk to you about self-defense and I would submit to you that it's because it's incredulous the defendant believed he needed to defend himself on this occasion.

Defendant contends that the comments were improper and that the prosecutor's remarks "incurably prejudiced the jury's deliberations" such that the verdict was unreliable and he is therefore entitled to a new trial. Defendant cites *State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986) in support of his argument. In *Williams*, this Court vacated the defendant's death sentence and remanded the case for a new sentencing hearing based upon the improper submission of an aggravating circumstance that the victim's killing was motivated by defendant's desire to eliminate her as a potential witness, despite there being no evidence to support the theory. *Id.* at 480, 346 S.E.2d at 409. At the second sentencing hearing, the prosecutor again repeatedly argued witness elimination, despite the fact that there was no evidence to support it. The North Carolina Supreme Court held that the trial court should have intervened *ex mero*

*motu,* and granted defendant a third sentencing hearing. *Id.* at 483, 346 S.E.2d at 411.

The instant case is distinguishable from *Williams.* Read in the context of the entire closing argument, it appears that the prosecutor discussed the necessary elements of self-defense, and then asserted that it was not likely that defendant met those elements. The prosecutor's comment was consistent with the evidence presented that (1) defendant was the aggressor throughout the entire situation, (2) multiple witnesses heard defendant's threats that he intended to kill anyone who interfered with his assault of Ms. Utley, and (3) these same witnesses observed defendant shoot and kill Mr. Horton after he issued these threats. It was reasonable in this context to infer that defendant did not act in self-defense. Further, the trial court charged the jury on self-defense. Since the issue of self-defense was before the jury, it was proper for the State to argue to the jury that it was not supported by the evidence.

We hold that the prosecutor's arguments were proper. However, even if there was any error in this argument, it was not so grossly improper that the trial court's failure to intervene *ex mero motu* constituted an abuse of discretion. *See Barden* at 356, 572 S.E.2d at 134.

NO PREJUDICIAL ERROR.

Judge CALABRIA concurs.

Judge STROUD concurs in a separate opinion.

STROUD, Judge, concurring.

Although I concur fully in the holdings of the majority opinion, I write separately to note that this opinion should not be construed as approval of the State's failure to produce certain evidence in response to defendant's discovery request and the court's discovery order.

As the majority opinion notes, the State did not provide the crime scene diagram (State's exhibit 3) and the photographs depicting the scene where the weapon was recovered (State's exhibits 24, 25, and 26) to defendant prior to trial, despite defendant's timely motion for discovery and the court's 16 November 2007 order requiring discovery. At trial, after defendant's objection to the State's presentation of

these exhibits, the judge asked the assistant district attorney ("ADA"), "[w]hy were they not produced to the defense earlier and why were they not produced as of Monday when they were received by you [from Detective Booth]?" The ADA responded,

> I guess in my experience, Judge, photographs like this are not something that we generally give to [sic] in discovery. . . . I didn't give him or hand over any—the gun or the earrings or the bracelets. Those kind of things. Photographs are the [sic] similar types of items. I gave him the other photographs because I happened to have them on a disk to do so and he doesn't have those. So I provided those to him.

Essentially, counsel's argument likened the photographs to the murder weapon and indicated that the Wake County District Attorney's Office ("we") *generally* did not provide this "kind of thing" to defense counsel, despite a discovery order.

> Defendant argues before this court that

> [i]t seems . . . absurd (especially in a First Degree Murder case) for presumably experienced prosecutors to tell the trial court that it just wasn't the custom of the Wake County District Attorney's Office to comply with the dictates of the general statutes and court orders when it came to tangible exhibits.

I agree. The State prevails in this case only for the reasons stated in the majority opinion. I write separately to stress that the State provided no valid reason to withhold discovery of the crime scene diagram and photographs and to clarify any misunderstanding which the State may have regarding types of photographs or diagrams to produce in response to a discovery order. The differences between a murder weapon or other physical evidence recovered from a murder victim and a copy of a photograph are too obvious to belabor. The State is obligated to produce the photographs or other evidence as requested and ordered in the discovery order—no more, no less.